Owners Insurance Company v. Benjamin Hugh Johnson Margaret Lyles Johnson 24-13530 May it please the Court, my name is Chuck Connerly, and I represent the appellants in this matter, Ben and Lyles Johnson. Ben and Lyles Johnson are homeowners with small children, and they are insured by the Appellees. This case began as a dispute over a brush pile, which could have been removed for $2,000. It has resulted in not one but two cases being filed in the Superior Court of Carroll County, Georgia. It has resulted in a now-dismissed and abandoned effort to obtain arrest warrants against the Johnsons. And it has resulted in this case, filed by insurance companies in federal court, which has cost my clients thousands of dollars. At least two panels of this Court have articulated the law in this circuit and have said that it's clear. Declaratory judgment actions vis-à-vis an insured's duty to indemnify, and we would contend it applies to the duty to defend as well, are not right until the insured's liability is established. Why would we take that case law dealing with the duty to indemnify and expand it? Because I don't believe you've cited to a case that says the same principle applies to a duty to defend. Instead, you cite other cases that simply say the duty to defend is broader than the duty to indemnify. And admittedly, the Dela Cruz case, which is this panel, not this panel, but a panel decision in this circuit that we rely upon, did not reach the question of the duty to defend. But just from a matter of logic, I can understand why until the liability below is established, the duty to indemnify doesn't kick in, because indemnify as to what? But if there's an underlying litigation that's going on, how the duty to defend would kick in while the defense is ongoing before liability is determined, right? So I want to make sure I understand the question correctly, because I think the question is, should we treat the duty to defend differently than the duty to indemnify and hold that that can be resolved in the context of a declaratory judgment? And my response to that would be essentially what Dela Cruz said, which is the duty to defend is broader than the duty to indemnify. And therefore, it only makes sense that the two would be treated the same. Wouldn't it make practical sense for both the insurer and the insured to know before a lawsuit was filed whether the insurer has the duty to defend its insured? So I want to answer, I think I'm going to answer both questions. They're the same. That's what I was trying to get at. I think it's the same question. Yeah. Because you're trying to get rid of this DEC action saying this is premature. Not ripe. Right. It's not ripe. But why isn't it? If there's an underlying lawsuit, the insurance company needs to know if it has to defend the action while it's ongoing. So I guess I just don't understand the premise of that argument that you're making. And I hope to address both of those questions in the same response. And we're probably going to be presenting a case to the Eleventh Circuit in which the district court has determined that there's no duty to defend, but has reserved the question of whether there's a duty to indemnify until after the underlying litigation is resolved. And I don't know how that's possible. If there is no duty to defend, then there's no duty to indemnify. Right. I feel like you're still not answering the question, though, which is not about this case, right? Forget about this case. Doesn't it make sense that even if the duty to defend and the duty to indemnify are coextensive, right? They will always be the same. Let's take that as a given for the purposes of this question. Doesn't it make sense that it would be important for both parties to know about the duty to defend before a lawsuit is filed rather than after a lawsuit is filed? But how do you separate the two? In other words, if it's not ripe, if Dela Cruz and Sullivan are correct that the case is not ripe as to the question of indemnification, how do you separate out the duty to defend? Again, because it's broader than the duty to indemnify. You're never going to have a case where the determination is made that there is no duty to defend but there is a duty to indemnify. But the reverse is also true. The reverse is not true. We all know of cases where there have been a duty to defend but you get to the end of the rainbow and depending on how the case is resolved, it's determined that there's no duty to indemnify. Perhaps they ruled in favor of the insured on the covered questions but decided that the insured was liable on some particular claim, maybe an intentional tort, that's not covered under the policy. But Judge Grant, and this to me is the most important thing about this case, is this case involves a fact that doesn't appear in all of the other cases, and that is that the underlying lawsuit was dismissed. Right, but the second lawsuit had already been filed as a renewal action under Georgia law, which I know has a different case number, but isn't that essentially an amended complaint? That's what they styled it as. But if you look at it, and we identify the paragraphs in our reply brief, there are some 14 additional paragraphs that deal with events that occurred after the initial lawsuit was filed. But don't those still fall within, I mean, if there's a duty as to the things in the original complaint, isn't that still determinative of if there's a duty as to those other things? It is, but in our case, the denial of coverage is based on notice, and they're saying that the insurance company was not put on proper notice of the initial lawsuit. What we're saying is the notice issue, at least as it relates to the second lawsuit, has been cured because they were put on notice. Now, they may come in and say, okay, well, that presents a question of whether some of the claims may be barred because of notice, but some may not be barred because of notice. But that gets us right back into the policy, the good policy behind Dela Cruz and Sullivan, which is, that's why this case is not ripe for review. This court cannot make a determination right now that there are no circumstances under which there would be coverage here, and that's what they're asking this court to do. And so we believe that a critical fact that is present here, again, that wasn't present in some of the other cases, is the fact that we have a second lawsuit where the notice issue will not be an issue, and they won't have a defense to coverage on that basis. But it's treated, this is a lawsuit dealing with the same dispute and the same parties, and it is treated as a renewal action. I disagree. I know they styled it a renewal action. So if we agree with them that it's a renewal action, how does that affect your argument? I think it's still, my argument still is the same because the claims arise from a different set of circumstances. If you look, if you compare the two complaints, and I know the court requested that we file the second complaint, the first complaint deals only with the brush file. Second complaint says that after the whole brush pile incident, that the Johnsons expanded the size of their pool deck, the concrete around the pool. And as a result of that expansion, there was additional stormwater runoff that has now impacted the Dysinger property, the neighboring property. So there are claims that aren't arising out of the same operative facts, the same properties. Why wouldn't we, in this context, apply ordinary principles of collateral estoppel, res judicata, to say, to evaluate, as we do in other types of cases, these particular claims were already litigated by both parties, you know, all the requirements. So those are covered by the original district court decision. But whatever these new claims are, those haven't been litigated, and so they're not. So where does that leave the Johnsons? Where does that leave the attorneys as a practical matter? What happens in the underlying litigation? Is the insurance company going to say, we're providing you a defense, but only as it relates to these claims, and you're going to have to get your own lawyer to handle these other claims? I mean, as a practical matter, how do you even do that? And how do you parse that, not only in terms of the duty of defense, but the duty to indemnify? Let's say there's a jury award at the end of the day where damages are awarded. How is the insurance company going to parse between those that were associated with the first lawsuit? I mean, I assume the verdict form could do that. Well, assuming they give a special verdict form. I mean, the trial judge may say that I'm going to give a general verdict form. Is your client also—is your client seeking repayment of fees that were incurred through their private counsel? Through me? Yeah. No, not at this point. Okay. So, only coverage—I mean, defense at all to be offered. So, right now, in the second lawsuit, they are given coverage pursuant to a reservation of rights for the second suit. The insurance company is currently defending both lawsuits under a reservation of rights law, which is their right to do. And I'm sort of eating into my rebuttal time. We'll let you keep going. But I want to say as a matter of policy, I feel like Dela Cruz and Sullivan are right. They're right in several respects. First of all, it gives us practitioners a bright-line rule, and we like bright-line rules. If there's underlying litigation, then DEC action seeking coverage determinations are not right. Period, end of story. Bright-line rule. You say, well, is that unfair to the insurance company? Well, I suppose it eliminates a remedy to the insurance company, which is to seek a DEC action at the same time the underlying action is going on. But they still have their other remedies, which are they can deny coverage. They can treat it as a covered matter. They can provide a defense under a reservation of rights. And then depending on how the lawsuit unfolds, they can then deny coverage if the ultimate claims aren't things that are covered. The only thing they give up is the right to do what they've done in this case. But look at the flip side of that coin. What does it cost the Johnsons? The Johnsons have had to hire me to defend them. They're homeowners. And they've had to hire me to defend them in a federal court declaratory judgment action over a dispute that started over a $2,000 brush pile. And I would submit to the court that the system is already stacked in favor of the insurance company. Let's don't put the burden on the insureds to defend on a coverage case, at least until the underlying litigation has been resolved. I think it's good policy, and it's a good bright line rule for us practitioners to follow. Why doesn't that create—I'm not suggesting that this is what your clients did, but wouldn't that create an incentive for parties to continually drop their suit and then refile it if it looks like things are going the wrong way? Now, from the perspective of the plaintiff or— Right, from the perspective of a person in your client's position. Well, I mean, my client is the defendant. Oh, right. Sorry. There are a lot of parties in this case. From the perspective of the plaintiff party. Because honestly, the one thing I suspect that your clients and their neighbors can agree on is that they would really like the insurance company to be covering this, right? I mean, if there's one place they can find an agreement, I think that would be it. They do now, right? Sure. So why wouldn't that give an improper incentive to a plaintiff to drop a lawsuit if it— you know, sometimes you have a feeling after a hearing or whatever, to drop the lawsuit if it doesn't seem like it's going the right way, adjust their complaint to deal with some of the perceived failings in the first one, and just keep on a merry-go-round? Well, I think there's now a procedural problem in doing that. And now I'm talking about the Georgia Civil Practice Act, but the court may know. But for many, many years, you could actually dismiss without prejudice a case prior to calling the first witness. So it allowed plaintiffs to actually impanel a jury and decide whether they're happy with the jury or not, and then dismiss the case without prejudice and refile within six months. That law has now changed in Georgia. And the new law is you get 60 days from the date that you file— I think it's 60 days from the date of the filing in order to dismiss without prejudice and be able to refile. So as a practical matter, I think that all but eliminates your concern about gamesmanship by the plaintiff. Did that happen here? Were the Disingers within that 60 days when they refiled? So it comes back to the nomenclature. I mean, we don't think that what they filed—they say it's a renewed complaint. We think it's a new lawsuit. So, you know, we've not raised the issue. I think it probably would be—that's a fairly recent change to the Georgia Civil Practice Act. So it probably—the original case probably fell within the old law. But I honestly don't know that for sure. So at the end of the day, the judge dismissed or granted summary judgment purely based on the notice issue, the timing of the notice. The Disingers probably saw that coming. I mean, I think that goes to Judge Grant's question, which is, you know, there's easily a door open here for collusion, even though the Disingers and the Johnsons don't appear to want to hang out at Christmas dinner together. I can assure the court they're not exchanging Christmas cards. But as Judge Grant pointed out, I think the one thing that they can all agree on is they want coverage here. But, I mean, I think respectfully, I mean, we're talking about a scenario that's so unlikely, whereas, you know, the bigger policy issue that underlies Dela Cruz and Sullivan I think is much more important, which is we don't want to hear—we federal courts don't want to decide coverage cases where there's active underlying litigation until that's resolved. And I think that's good policy. And, again— Unless it's just so blatantly obvious. I mean, I get those when I'm sitting in the district court. We get them. And if it's blatantly obvious, there's not going to be coverage. You know, it's like, why don't we tell everybody, which goes back to Judge Grant's really early question, why don't we just let everybody know that now while you're deciding how far you want to go in that underlying case? And, you know, as we prepare for these things, we all go through our six or seven questions. What would I ask me if I were in your position? And one of them is, well, counsel, is it your position that there are no circumstances? And, no, that's not our position. We don't believe in our case that we have to convince the court that that should be the law because we think particularly under our facts that the underlying—this case was not right for review. But I agree with you that I could see a scenario where something would be so crystal clear that you could make a coverage determination. And, frankly, I think that's something that could be the law in the Eleventh Circuit. And there are other—you know, we see clear and convincing standards and all that kind of stuff in other applications of the law. So it certainly could be the rule in the Eleventh Circuit that unless the coverage issue is, you know, clear and convincing, or whatever language you want to use, it is going to be the law in this circuit, at least, that we are not—these cases are not going to be right for our review until the underlying litigation is resolved. Thank you. Actually, if you don't mind. Looking around, I found a case from the Eleventh Circuit in 1995 that says, the standard declaratory judgment action brought by a liability insurer against its insured oftentimes contains two ifs. If the insured is sued and if he is found liable, then there is no duty to identify. The insured person may not sue or he may not obtain a judgment against the insured, but there is held to be a sufficient controversy between the insurer and the insured person that a declaratory judgment is permissible. Do you—I mean, in some places, I suppose, it's possible to even—to bring a lawsuit like this even before there is an underlying lawsuit. First of all, are you familiar with that statement and others from this court saying if we've had a view on that? And second of all, are you aware of any Georgia cases considering that same issue? Because sometimes consistency can be important. So, that was another question that I would have asked. Glad we're nailing it. And I think if you—I don't—the insurance companies rely on Jawanda, which is a district court opinion where Judge Greenberg basically says, I don't care what Dela Cruz says or Sullivan says. They're unreported cases, and I'm going to go back to some old Fifth Circuit case law kind of thing. And, you know, but I think if you look at the cases that he relied on and are cited, and some of them, there's two older Supreme Court cases from the 1940s. I believe they all deal with your question, which is actual case and controversy. And the actual case and controversy requirement and the rightness requirement are two different things. In our case, there's clearly an actual controversy. We don't dispute that. We just encourage this panel to follow the other panels to say that it's not ripe for review. So, to answer your question, yes, I do see a situation where, if there was no underlying action, you could, in theory, have a deck action on the coverage issue, so long as there's an actual case and controversy. I don't know that— Maybe there's Article III standing, but you're saying, prudentially speaking, it's not ripe. It's not ripe. So, my concern would be, in a case where there's no active litigation, has the controversy materialized to a point where there's an actual controversy? In other words, if the Dysingers shouted over the property line to the Johnsons and said, we're going to sue you over that brush pile, and that's as far as it had gone, and then the insurance company went and filed a deck action in federal court, I think there would be a question as to whether there was an actual controversy or not. I think that is what those cases go to. But, certainly, there's a point along the continuum, most likely, between what I described and the actual filing of a lawsuit, where there would be an actual controversy. So, the short answer is, yeah, I think there is— it is plausible that, in the absence of underlying litigation, you could still have a deck action, as long as it satisfied that requirement, because it wouldn't implicate the ripeness issue that are implicated when there is an underlying lawsuit. Thank you. You still have some time for rebuttal. You have three minutes. And please correct me if I pronounce this poorly.  Karen? Correct. Karen. Karen? Karen, yes. So, I'm here today, Your Honors, and good morning, to discuss and represent the insurer appellees in this matter. And I'd just like to note that the notice issue wasn't even appealed, but because it's been brought up, I would like to just briefly represent or talk about a couple of things. I don't have the case law prepared, but it's not just, in this case, a problem of whether the insurers got late notice of the lawsuit, which was refiled. And there is Georgia law that says if there's late notice on the lawsuit, it's dismissed and refiled, and that's cured. But that doesn't cure the late notice of the occurrence. And in this case, the late notice of the occurrence was egregious, and that is what the district court concluded, and that's why that's not on appeal. In fact, the Johnsons did not ever give notice to the insurance company about the ongoing litigation with the Deisingers. It was the Deisingers who finally figured out who their insurer was whenever they refused to give the insurance information pre-suit, despite getting letters threatening litigation and asking for the insurance information. And it's on the record that they testified they didn't give notice because they didn't want to make a claim. So I would take issue with the argument that we should feel sorry for the Deisingers, or I'm sorry, the Johnsons, because they had to spend money on the coverage litigation now because if they didn't want to make a claim, they could have said, we don't need your defense, we don't need to fight about this, we're not making a claim and we're just going to proceed on our own. But they didn't do that, and the reason for that is because the underlying litigation has become so ugly and it had spiraled so far out of control before the insurers were even put on notice about it. And so that late notice of occurrence is something that cannot be overcome. They've got a claim now, huh? I'm sorry? They've got a claim now, don't they? Well, I disagree because when you look at the renewal lawsuit, which you all have correctly noted, it's basically every count is exactly the same. They have added some facts. I guess more things have happened in the dispute that have contributed to the alleged property damage. Correct, Your Honor, but the basic premise is the Johnsons are doing intentional acts causing excessive silt, sediment, stormwater to flow onto their property, and that is the basis that supports the nuisance claims in both suits, the negligence claim in both suits. They also in both suits have claims for damage to trees. Basically, everything is— But isn't the pool deck a separate neighborly situation apart from the brush fire? Not really. If they already knew that they were in litigation, had nasty litigation at that, because of claims that they were causing water to improperly and intentionally flow onto their neighbor's property, our contention would be that that's just part and parcel of the same intentional bad acts causing more water to flow, but that's the nature of the basis for the original complaint. So those are two separate issues. But you are providing a defense in the second case, right? Correct. The insurance companies are continuing to provide a defense because this was put up on appeal. And so turning now to the reason that we're here today, it's really the question I think that the court is looking at is the amount and controversy determination and what standards you use, whether the court should only look at the cost of the duty to defend or if the court should also consider the cost of the indemnity relative to the damages in the underlying lawsuit. And we will agree that as a general rule, courts recognize that an indemnity claim is generally not ripe until the underlying suit is filed or is resolved. But there is an exception, and this court has recognized it time and time again, and that exception is when the court has determined that there is no duty to defend, then it is right to also conclude that there is no duty to indemnify, and that is because the duty to defend is broader than the duty to indemnify. And, you know, there are multiple 11th Circuit cases, for example, Pickens at 582 Federal Appendix 839, Cowan Truck Line 572 Federal Appendix 824. So in this case, why would there be no duty to defend now as to the second lawsuit? Because now we know the notice issue has been cured as to the lawsuit. Right, but it hasn't been cured as to the original set of occurrences. I guess I'm struggling with that. So you get into a fight with your neighbor. You're fighting over $2,000. You say, you know what, I'm not going to tell my insurance company it's not worth it. The rates will go up. I'm going to handle it. I'm going to self-insure for this. They file a lawsuit against you that covers that pile of brush that you claim is worth $2,000. They dismiss the lawsuit, and then they file what they claim is a renewal lawsuit. And now they have decided that everything, every structure on your property is somehow contributing to damage on theirs. And you say for the first time, oh my goodness, they are now alleging landscaping issues, pipes from pools and all of that. I've got to tell my insurance company. Why doesn't that cure the notice problem? Because, again, it goes back to what the original allegations were. And the allegations are that they were conducting activities that would cause excess stormwater, excess silt, excess sediment. The same causal damage is the same. There may be some additional intentional acts involved, which, again, we would contend, you know, if you're intentionally doing that when you're in the middle of a lawsuit regarding this very issue, that all is part and parcel of the same problem. But does the clock start just because something happened, or can the clock start when you realize, just like Judge Branch was saying, oh, you know what, now this is $100,000, you know, damages to my property. I thought it was only going to be $2,000 damages. Like, does the clock start when you get that realization of the magnitude? The clock starts when you have notice of a claim or even a potential claim. That's when it starts, and they didn't give that notice. But why is it not that the pool issue, for example, is not a separate issue? Like, I can understand. You have a debris pile. You all are fighting over it. And for the second lawsuit, they say now the pile is higher because they're continuing to add to it. Okay, that's clear. Same dispute. But when the Disingers have now added, like, we think the drainage from your pool, which has never been mentioned before, is causing problems, why can't you say to the insurance company, this is a completely different dispute that we didn't realize was going to come out in a lawsuit until the second one was filed? Well, I think, in fact, if you go back and look, those issues were raised in the original lawsuit. That came out during the first lawsuit. And that was part of. . . But it was not in the complaint, right? But it was in their allegations. It was something that they knew and were disputing. So I think, again, that's all just additional evidence of damages, additional damages, but the same claims from the original lawsuit. It sounds like, going back to my collateral estoppel question, that whether you're right or wrong is a question that hasn't already been considered by a court. What's your response to my suggestion that these types of questions could be determined on collateral estoppel, such that whatever claims are mirrored in the second complaint, those have already been addressed by the district court and there's no reason to have a do-over since both parties fully litigated those. But whatever the new claims are, then that could be separately considered. I would believe that, in fact, really race judicata would apply because, again, it's the same parties, the same claims. Sure, yeah, race judicata, all the doctrines. Right, and so in that case, it's already the whole thing has been dealt with. They didn't give timely notice of what they should have done. And whenever they knew that there was a problem, they didn't give notice. Do you know if there are any federal courts that have already applied that race judicata approach to questions like these? I can't imagine this is the only circuit where this comes up. I am not aware of any. To be honest, Your Honor, I thought that really the court was going to be focusing on the split in the circuit about the amount in controversy issue and felt like this was pretty clear that this is, you look at the two complaints, they're identical claims right down the line. There may be a couple of items here or there that are slightly different elements of damage, but the basis of the claims are identical in both cases. I find myself wondering, too, this has spiraled out of control from the original lawsuit, and now it seems like someone and potentially multiple someones are in line to lose a lot of money here, right? Whatever the answer is on what we consider for the amount of controversy, I think the actual amount in controversy has expanded over time to a pretty big number.  I have not checked. Do you know if the parties here have engaged in mediation? That I don't know, Your Honor. Including the insurance company? Nope. The insurance company has not. To my knowledge, the insurers have not been asked, certainly on the coverage side, to participate in a mediation other than we might. Actually, I'll take that back. Through the 11th Circuit process, we attempted to mediate and allowed the Dysingers to participate, but the parties just couldn't. I think the Johnsons and the Dysingers just were not able to get on the same page on anything, and that came apart. But outside of that, there's been no request for the insurers to participate in any sort of mediation of the claim. At this point in the state case, how much are the Dysingers seeking? At this point, based on my knowledge back in August, they claim to have incurred over $100,000 in attorney's fees alone, and they claim to have incurred about $192,000 in damages total, just dealing, I think, with experts and different things, because obviously when you're dealing with water and erosion issues, that requires a lot of expert input, and that doesn't even start to get into the trouble damages and the punitive damages that the Dysingers are claiming, which they claimed in both lawsuits. I think one of the Dysingers in the underlying state lawsuit have a claim for fees against the Johnsons? Yes, they have under multiple statutes. They've got it under OCGA 13-6-11. They're also seeking it under the Conversion and Damage to Trees statute at OCGA 51-12-50. Under that statute, you can recover trouble damages and attorney's fees as well as the reforestation damages to correct the problem. So then the Johnsons will ultimately, even if we froze everything in time right now, well, before we're looking at trouble damages, the Johnsons will be seeking coverage from your client in the neighborhood. If we froze right now and we didn't have trouble damages, what is the neighborhood? I wouldn't know exactly, but certainly it's well in excess of $75,000, I would say at this point. Even auto owners in defending the Johnsons have actually incurred over $90,000 in attorney's fees as of last August. So putting aside the amount in controversy question and turning to Judge Branch's mediation question, the amount that the parties in it would be at mediation, forget about the Dysingers for now, the Johnsons versus your client, they'd be coming in at a ballpark of a couple hundred thousand dollars. I think that could be a ballpark estimate. I think from my knowledge, and again, I'm not actively involved in the underlying lawsuit, but I think before the renewal suit was filed, they already had experts out there opining on what the cost would be to repair the damage, and to my knowledge, they haven't really supplemented that or made any changes, or it's just been barely tweaked based on the allegedly new examples of causing water damage and erosion to their property. So I think as far as I know, there's not really been much movement in what the alleged damages are between the original lawsuit and the new lawsuit. I'm not sure where they are. If they're waiting to be put on a trial calendar, I'm not really sure where they are in that sense of the status. And then going back to the DEC action, which obviously is now on appeal, so that kind of froze things there, but when I read the district court's opinion, I mean, is it clear to you when you read the district court's opinion that the district court, in opining on this notice issue, was focused on both notice from the occurrence and notice from the date of the lawsuit? So is that issue done from your perspective as far as the district court was concerned? Yes, Your Honor, and that was certainly something we argued in our summary judgment brief, that it's both not just late notice of the lawsuit, it's also egregious late notice of the original either claim or potential claim. They had, again, letters sent to them threatening lawsuit. They had letters asking them to give the insurance information so that that could get involved, and they flatly refused to do it and didn't do anything until, again, the Dysinger's figured out who the insurer was, and then once everything had spiraled out of control, now they want the defense. But if the insurance companies had had an opportunity to get involved before the lawsuit started, when the Dysinger's asked for that information, this whole thing might have gone away, but we'll never know now because it had been allowed to spin violently out of control, and that's the reason for the notice provision, so that the insurers have an opportunity to get involved, see what's going on, see what they can do to resolve it. They were completely kept out of the loop and unable to do that before this has just exploded violently out of control. So if this court affirms, you're done?  You'll even stop the defense under the reservation of rights in the state court suit? That would be my understanding, correct, Your Honor. Do you know if the defendants would have an obligation to repay for the defense that has already occurred? That doesn't matter to our decision, but I'm just curious. Right. I think that there is sort of a— there are some cases in the 11th Circuit or Northern District, and I think, to be frank, there are some cases that would indicate that probably the insurance company can't recoup, but if the reverse were true, the insured might be able to recoup, but right now that's not the position or the posture of the case. And one more question. Returning to the race judicata issue, do you share the concerns of your friends on the other side that if there were somehow a partial duty to defend or a partial duty to indemnify, then that would be confusing? In my view, when you look at this instance, I think on the facts, no, because, again, you look at the elements of the complaint, the elements of the claims, they're identical claims. The only change is that in the renewal complaint, they dropped a claim where they didn't actually— it was a statutory claim where they actually had no right of action. But if you look, every other claim is identical. The supporting facts for those are virtually identical. I can see that they've allowed for a few different facts that would increase the damages. No, I mean, I know that you would argue that the whole thing wasn't covered, but let's say—don't even make it your case— let's say that there's—in another case, there's a deck over coverage for Suit A. Suit A is dropped. A second complaint is brought with Suit A and— or Cause of Action A and Cause of Action B, right? Totally separate. Do you have practicality concerns about letting the answer for Claim A that was brought in the first suit be not defended in the second suit, whereas the insurance company does ultimately provide a defense for the party in Claim B? I'm not sure if I'm going to answer what you're— or if I'm understanding your question, but I think if you look at the nature of the claims, if it's clearly a completely new and different claim in Cause of Action, then that might be a different situation where there might be coverage. But in this case, again— No, no, no. Let me be clear. I'm not asking you about this case. Forget this case. You are conceding nothing about this case by answering my question. In a different case, a party has brought an action against the insured person, right, with one claim, and the insurance company files a deck action seeking no duty to defend and no duty to indemnify on that one claim, right? That gets decided. But then the plaintiff in state court drops that first lawsuit with Claim A, right, and refiles a new lawsuit with Claim A and Claim B. And Claim A and Claim B are definitely different, right? They're completely different. Do you think it would cause practical problems for the court to say, well, the defense of Claim A has already been decided and it's not owed, but Claim B is different and the insurance company does owe a defense on Claim B, so therefore the insurance company is obligated to provide a defense for half of the claims in this refiled lawsuit? Do you think that that would be practically difficult? I don't think so, Your Honor, because under Georgia law the general rule is if there is a complaint, some of the claims are covered, some are not, the insurance company is then still required to provide a defense. On the indemnity side, there may be an ability to parse out what should be indemnified or not. But in the instance where you have two completely different claims, that might trigger a duty to defend regardless. But again, in our case, our position is that these are not different claims. It's just additional claims of damage related to identical claims that originally were asserted and should have been given notice of. And last question for you. Do you know of any Georgia cases that address this specific question, the second question, which is after one complaint is dropped, do you have the Georgia courts said anything about whether that has any effect on the second case, the refiled case? To be honest, I'm not aware of this particular fact scenario other than just the general law that talks about the duty to defend. And generally speaking, if you've got a complaint and there are certain claims that are covered and certain claims that are not, there would still be a defense provided and then you would deal with the indemnity on the other side, possibly, unless the court ultimately then determined that there was no duty to defend with regard to the new claims as well. So I guess just to make sure we're on the same page, what I'm asking is pretend that we are a state court in Georgia rather than a federal court. The amount of controversy is $50,000, so you're not in federal court. Is there a clear answer about how a Georgia court would handle the question of the assertion of mootness for the, let's say, Superior Court's decision? I'm not aware of any case. I mean, I've looked and haven't found it either, but I thought I should ask others to make sure we haven't missed anything. Not to say that there isn't one. I'm just not aware of it for this identical scenario. Okay. Thank you. Thank you, Your Honors. Thank you. Mr. Connerly, you have three minutes. Thank you. In terms of whether the district court considered the second complaint, I don't believe that the district court did, and I say that because of the timing. So we notified the district court of the dismissal of the first lawsuit, and if you recall looking at Judge Batten's order, he basically just says that the fact that the underlying suit has now been dismissed without prejudice does not change this analysis. The new lawsuit was not filed until about three days before the order came out. So I don't believe that the district court even knew that there was a second lawsuit that had been filed. I know we didn't argue that as part of the summary judgment proceedings. But, I mean, it doesn't seem that he cared, or he had a good premonition because he basically said they could file another lawsuit, so he kind of saw that coming. But would you agree that Judge Batten was focused, as far as the notice issue goes, he was focused on the timing of the occurrence, so notice from the occurrence, which would mean the fact that a second lawsuit was filed might be irrelevant to his ultimate conclusion, which was notice was too late because the occurrence happened, you know, clocking it from the occurrence. On the brush pile, maybe, not the pool deck. The pool deck doesn't even become an issue until the second lawsuit. Well, when was the pool deck built? When did the runoff problems start from the pool deck? I mean, we're not deciding that, obviously. I don't think they even knew about it until they sent an expert out to look at the brush pile, and the expert looks across the line at the Johnson property and says, you know, you may be having some additional runoff coming from the pool deck. But opposing counsel said the issue with the pool deck came up during the pendency of the initial lawsuit. But they had not amended their complaint to add those additional claims. I want to be clear, though. I mean, the district court did not consider the effect of notice as it relates to the second lawsuit. I'm not sure the parties notified the district court because the timing was so close.  And so I almost hate to say the following words, but I suppose one thing this court could do is to remand this case back to the district court for consideration as to whether, you know, those facts would have made a difference in terms of coverage here. But the reason I say it is it's illustrative of the whole thing. Notice issues are sticky, right? I mean, this whole conversation we're having about notice and whether it was the occurrence and all of that kind of stuff and whether it's timely. I mean, those things tend to be fact-intensive. Why would the federal courts even want to weigh in on those issues while there's underlying litigation pending? And I think that's the policy articulated by Dela Cruz and Sullivan. I mean, why even have this discussion when there's underlying litigation pending? So that's my point in that regard. I encourage you to reverse and not remand. But the final thing is, because I didn't say anything about the amount of controversy. You are over your time. Thank you, Your Honor. Thank you both. We have the case under advisement, and court is in recess until tomorrow morning.